**ALUMINUM COMPANY OF AMERICA,**
Plaintiff,

v.

**William H. TANDET, Defendant.**

Civ. No. 9534.

United States District Court
D. Connecticut.

Oct. 30, 1964.

As Revised Nov. 25, 1964.

**112**

John S. Barton, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for plaintiff.

Julius B. Kuriansky, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, Conn., for defendant.

ZAMPANO, District Judge.

Plaintiff, hereinafter referred to as Alcoa, moves the Court for a judgment on the pleadings dismissing defendant Tandet's Second Affirmative Defense and Counterclaim based on Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13. Plaintiff claims the pleadings do not state a violation of the Act since Tandet was not a purchaser from Alcoa and no sale at a discriminatory price is alleged.

Alcoa, a Pennsylvania corporation, manufactures and sells aluminum and aluminum products. Tandet, a resident of Connecticut, individually and doing business as Main Machine Company, manufactures and sells furniture made of aluminum and aluminum products.

On June 9, 1961, the parties entered into two written agreements. In one, Alcoa agreed to sell a portion of its plant at Bridgeport, Connecticut to Tandet for $300,000. Under the other agreement, Alcoa agreed to sell and Tandet agreed to buy certain aluminum products in the amount of $2,500,000 over a five-year period at Alcoa's "prices in effect at the time of shipment". The real estate transaction was consummated on September 15, 1961, but there has been no completed performance under the sales contract owing to a disagreement as to the meaning of the contract's price provisions.

The plaintiff's complaint sounds in contract. It alleges that the two aforementioned contracts were executed as a combination sale; that the prices to be charged Tandet for aluminum products would be approximately ten per cent higher than the actual market prices for the products but that these excessive prices were contemplated by the parties to afford Alcoa "an extra profit margin of approximately $250,000 in consideration of the reduced price to the defendant for the sale to him of the portion of plaintiff's manufacturing plant"; that, on or about November 15, 1961, Tandet submitted a purchase order to Alcoa with stated market prices therefor; that Alcoa rejected the order; that there have been no consummated sales between the parties because of the price dispute; and that, as a result of Tandet's breach of contract, Alcoa has suffered loss and damage in excess of $250,000.

The two written contracts do not refer to each other. Attached to the contract for sale at the time of execution on June 9, 1961 was an Alcoa price list, dated August 5, 1960, and designated "Schedule A".

Tandet's Answer and First Affirmative Defense and Counterclaim deny the existence of a combination sale and affirmatively seek damages, in contract, claiming Alcoa breached the sales agreement with resulting loss to Tandet in the amount of $320,000.

In a Second Affirmative Defense and Counterclaim Tandet similarly de-

nies the combination sale, and, alleging an independent contract for sale of aluminum products, it invokes the price discrimination provisions of the Clayton Act, as amended by the Robinson-Patman Act, and claims treble damages of $1,560,000. 15 U.S.C.A. § 13. For the purposes of the present motion Tandet's factual allegations must be taken as true, and the issues must be viewed as though there were no combination sale. Rule 12(c), Fed.R.Civ.Proc.; 2 Moore's Federal Practice § 12.15, p. 2269. In these pleadings Tandet alleges that he was a customer of Alcoa from 1953 to December 1961; that, pursuant to the contract for sale of June 9, 1961, he ordered aluminum from Alcoa on November 15, 1961 at prices which Alcoa sold to other purchasers; that Alcoa refused to sell to him unless Tandet would consent to pay prices specified in printed price schedules; that these prices were ten per cent higher for products of like grade and quality which Alcoa sold to other purchasers; that as a result of this price discrimination, competition in the sale of aluminum furniture products in interstate commerce has been lessened; and that Tandet has been damaged for which he seeks treble damages in the amount of $1,560,000. There is no allegation of a consummated sale between the parties.

Alcoa's reply to Tandet's counterclaim admits, among other things, that "since in or about December, 1961, plaintiff has sold aluminum products of the type ordered by defendant to other manufacturers of furniture products at the market prices therefor which were at least ten per cent (10%) less than the prices defendant was required to pay under the said agreement, Exhibit A".

■ ■ The plaintiff's motion presents this question: Are Tandet's Second Affirmative Defense and Counterclaim insufficient as a matter of law because no actual, completed sale at a discriminatory price is alleged or claimed?

The portions of Section 2(a) of the Clayton Act, as amended by the Robin-

son-Patman Act, 15 U.S.C.A. § 13(a), pertinent to the issue presented, provide it shall be unlawful "to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States * * *, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided* * * * That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade * * * ".

Alcoa contends the Act is violated only when there has been an actual, completed discriminatory sale. It claims here, contrary to statutory requirements, Tandet was an "offeree", not a "purchaser"; there were "offers to sell" by Alcoa, but not "purchases"; and commodities were "offered for sale" at allegedly discriminatory prices but not "sold". It relies on a line of cases which embrace the language and ruling in Shaw's Inc. v. Wilson-Jones Co., 3 Cir., 105 F.2d 331, at 333, wherein is stated: "Therefore at least two purchases must have taken place. The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase, a person who goes into the market-place for the purpose of purchasing. In other words, it does not mean a prospective purchaser, or one who wishes to purchase * * * ." In Package Closure Corp. v. Sealright Co., 141 F.2d 972, 979–980 (2 Cir. 1944), the Court of Appeals affirmed the district court's refusal to equate mere offers to discriminate with actual price discrimination. See, also, Klein v. Lionel Corp., 237 F.2d 13, 15 (3 Cir. 1956); Chicago Seating Co. v. S. Karpen

& Bros., 177 F.2d 863, 867 (7 Cir. 1949); Sorrentino v. Glen-Gery Shale Brick Corp., 46 F.Supp. 709, 711 (E.D.Pa. 1942), and Hartley & Parker, Inc. v. Florida Beverage Corp., 307 F.2d 916, 921 (5 Cir. 1962).

Insisting upon a purchase at a discriminatory price as prerequisite to suit under Section 2(a), argues Tandet, would defeat the efforts of Congress to curb price discrimination. He seeks to distinguish the authorities cited by Alcoa, claiming those cases concerned a seller's *complete* refusal to deal with a customer, which is protected by the proviso in Section 2(a), supra, and thus are not relevant to the instant case which involves a seller's refusal to deal with a customer *because the customer is unwilling to pay a discriminatory price*. In support of its position, Tandet cites the "all fours" language in American Can Co. v. Bruce's Juices, 187 F.2d 919, at 924 (5 Cir. 1951) rehearing denied. 190 F.2d 73, certiorari dismissed, 342 U.S. 875, 72 S.Ct. 165, 96 L.Ed. 657 (1951), as follows: "Moreover, plaintiff was not bound to purchase the 3.12 Iscan upon * * * (discriminatory) terms in order to attain the status of a competing purchaser under the Act, as its failure to do so was directly attributable to defendant's own discriminatory practice". Alcoa urges the Court to reject Bruce's Juices as authority because it is contrary to the law of this Circuit and inconsistent with the express language of the Act.

After a study of all the pertinent cases, the Court finds the solution to the issue, consistent with the authorities relied upon by both parties, lies between their respective positions.

Prior to the execution of a formal writing, businessmen bargain in the realm of credit proposals, quotation of prices, offers and counteroffers, and their words and actions have little legal effect. Once, however, the terms and conditions of an agreement are settled and the contract document drafted and signed, particular rights, obligations, benefits and liabilities accrue which the courts recognize as binding and enforceable. In the instant case, Alcoa and Tandet were parties to a contract for sale of specified goods. They were no longer in the categories of an "offeror" or an "offeree"; they became the "seller" and the "buyer". The transaction on paper was complete; legal relations became operative. The incidence of delivery and payment would affect only the type and kind of remedies an aggrieved party would have in the event of a breach of contract by the other party, but in no other way was their legal status as a seller and a buyer diluted. Submission of the purchase order by Tandet in November, 1961 was not an attempt to enter into a contract but must be regarded as an act done pursuant to an existing contract.

Applying these concepts to the legal principles enunciated in the cases cited by Alcoa, Tandet qualifies as a purchaser and not a mere offeree; there was a purchase of specific goods, not an offer to sell unidentifiable products; and there was a sale with price, conditions and terms agreed on, not an offer waiting for an acceptance. This is not a "refusal to sell" case, for Alcoa actually signed a contract for sale of goods to Tandet. By its own contract action in this Court, Alcoa recognizes itself as an aggrieved seller seeking remedy against a breaching buyer.

On the other hand, the Court does not read Bruce's Juices, supra, to authorize any prospective buyer or offeree in the open market to be a beneficiary under the Act. A review of the several cases involving the Bruce's Juices Company and the American Can Company reveals that these companies had long established contractural relations. There is little question there were written contracts and perhaps binding oral agreements between the companies that evolved from a course of dealings over a period of years. See, Bruce's Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), and Bruce's Juices v. American Can Co., 87 F.Supp. 985 (S.D.Fla.1949).

The only case that might appear inconsistent with this holding is A. J.

Goodman & Son, Inc. v. United Lacquer Mfg. Corp., 81 F.Supp. 890 (D.Mass. 1949), which the parties cite as a contract for sale case. However, the Court interprets the agreement in that case to be a "contract to make a contract" for sale. An essential condition precedent, namely, the acceptance of plaintiff's bid by the State of New Hampshire, was necessary to make the writing operative as an enforceable contract for sale. The State of New Hampshire did not accept the bid submitted by the plaintiff in that case and, hence, there was no contract.

Therefore, the Court finds Tandet has status to sue under the Act. This ruling saves Tandet's Second Counterclaim but not his Second Affirmative Defense. The Complaint, Answer and First Affirmative Defense and Counterclaim join issue on claims in contract. Tandet's Second Affirmative Defense, based as it is on a claim of statutory price discrimination, may not be used as a defense to a claim for breach of contract. Bruce's Juices v. American Can Co., supra; Admiral Corporation v. Cerullo Electric Supply Co., 32 F.R.D. 379, 383 (D.C.1961). Tandet's contention, that the price discrimination defense is necessary should a jury find the parties had simply agreed to the higher prices for only the aluminum products, is unfounded. The pleadings are framed on the existence or nonexistence of a combination sale, and there can be no recovery on the contract action on the alternative basis Tandet suggests. The plaintiff's motion for judgment on the pleadings to dismiss the Second Affirmative Defense is granted.

With respect to Tandet's Second Counterclaim, the plaintiff's motion is denied. If this Court were to be the trial judge on the case, it would sever the Second Counterclaim for trial purposes until the contract aspects of the case were resolved by the jury. Rule 42(b) and Rule 21 of the Federal Rules of Civil Procedure. No prejudice to the parties would result, and it would seem appro-

priate to avoid confusion and delay. Whether there is to be such a severance is left to the discretion of the trial judge. Philadelphia Dressed Beef Co. v. Wilson & Co., 19 F.R.D. 198 (D.C.1956).