## RETAIL SERVICE ASSOCIATES

v.

## CONAGRA PET PRODUCTS COMPANY and C & S Wholesale Grocers, Inc.

Civ. No. B–90–543 (WWE).

United States District Court, D. Connecticut.

March 18, 1991.

Robert J. Nicola, Owens, Schine, Nicola & Donahue, Trumbull, Conn., for plaintiff Retail Service Associates.

Patrick Brookhouser, Jr., John P. Passarelli, McGrath, North, Mullin & Kratz, P.C., Omaha, Neb., for both defendants.

William B. Rush, James T. Shearin, Pullman Comley Bradley & Reeves, Bridgeport, Conn., for ConAgra Pet Products Co.

Ralph G. Elliot, Joseph A. Aceto, Tyler Cooper & Alcorn, Hartford, Conn., Robert D. Rachlin, pro hac vice, Robert A. Miller Jr., pro hac vice, Downs Rachlin & Martin, Burlington, Vt., for C & S Wholesale Grocers, Inc.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

EGINTON, District Judge.

Plaintiff, Retail Service Associates, ("RSA") commenced this action against defendants ConAgra Pet Products Company ("ConAgra") and C & S Wholesale Grocers, Inc. ("C & S") alleging that both defendants violated the Sherman Act (count one), the Robinson–Patman Act (count two), and the Connecticut anti-trust laws (count three). In addition plaintiff alleges that defendant ConAgra violated the Connecticut Unfair Trade Practices Act ("CUTPA") (count four), the Connecticut Franchise Act (count five) and breached its good faith obligation to RSA (count six).

Defendants have moved to dismiss all six counts of the complaint on the grounds that plaintiff has failed, in each count, to state a claim upon which relief can be granted.

For the reasons set forth below defendants' motions to dismiss will be granted.

## FACTS

Defendant C & S is a wholesale distributor of food and non-food products to retail grocery stores in the six New England states and New York. Defendant ConAgra is a national supplier of pet products and accessories. According to plaintiff, in late 1988, ConAgra, through its employee, Larry Axelrod, offered a price quote and added marketing incentives to C & S which were not made available to RSA, a former wholesale distributor of ConAgra products in Connecticut and Massachusetts. C & S allegedly accepted the offer and replaced RSA as the wholesale distributor of ConAgra products to Foodmart stores in Massachusetts and Connecticut. As a result of these actions, RSA claims that it suffered loss of potential future sales and the benefits of its ongoing relationship with Foodmart.

## DISCUSSION

In considering a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6), the Court must deem the facts as alleged to be true and must draw all reasonable inferences in the light most favorable to the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236–237, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). A motion to dismiss should be granted only when it appears beyond doubt that plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## A. *Count One—Sherman Act Claim*

In count one of the complaint, RSA claims that ConAgra and C & S entered into a contract in restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1 when C & S accepted ConAgra's offer to distribute its products to Massachusetts and Connecticut Foodmart stores. In substance, this count alleges that C & S has replaced RSA as a distributor for ConAgra pet products in certain Connecticut and Massachusetts Foodmart grocery stores and that RSA is now precluded from selling these pet products to Foodmart. Federal courts have consistently and summarily dismissed claims such as this brought by disappointed or "jilted" distributors. *See Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 133 (2d Cir.) (en banc), *cert. denied*, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978); *Blaine v. Meineke Discount Muffler Shop, Inc.*, 670 F.Supp. 1107, 1112 (D.Conn.1987); *McKeown Distributors, Inc. v. Gyp–Crete Corp.*, 618 F.Supp. 632, 645 (D.Conn.1985). As one court has noted:

> [I]t is simply not an anti-trust violation for a manufacturer to contract with a new distributor, and as a consequence, to terminate his relationship with a former distributor, even if the effect of the new contract is to seriously damage the former distributor's business.

*Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245, 1249 (5th Cir.1975).

Section 1 of the Sherman Act prohibits contracts, combinations or conspiracies in restraint of trade. Thus, to prevail on a Section 1 claim, the plaintiff must establish (1) a contract, combination or conspiracy; (2) that unreasonably restrains trade; (3) in interstate or foreign commerce. *Blaine*, 670 F.Supp. at 1112–13. Unless plaintiff's claimed restraint of trade falls within one of the specific areas where *per se* violations have been recognized under Section 1 (*i.e.*, tying, resale price maintenance and group boycotts), the Court must analyze the reasonableness of any alleged restraint under the rule of reason. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 719–22, 108 S.Ct. 1515, 1517–18, 99 L.Ed.2d 808 (1988). In this case, the complaint alleges that plaintiff's supplier, ConAgra, has refused to deal with plaintiff and has substituted another distributor, C & S, in its place. Such allegations do not invoke the *per se* rule, and therefore this Court must review plaintiff's Sheman Act claim under the rule of reason. *Blaine*, 670 F.Supp. at 1114–14.

Under the rule of reason, only practices which impose unreasonable restraints upon commerce are condemned. Applying the rule of reason to this case, plaintiff's claim fails for two reasons. First, the complaint fails to allege a contract, combination or conspiracy in restraint of trade. It is a well settled proposition of anti-trust law that a manufacturer or supplier such as ConAgra has a right to deal, or refuse to deal, with whomever it likes as long as it does so independently. *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 760, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984). The mere fact that a supplier has terminated one distributor and replaced that distributor with another does not, standing alone, create an illegal contract in restraint of trade. *Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d at 1248–49. Count one of plaintiff's complaint sets forth no facts from which it can be inferred that ConAgra acted other than unilaterally when it switched its distributorship to C & S.

Second, count one must be dismissed because it fails to allege an antitrust injury. In order to survive a motion to dismiss, "a section 1 claimant must identify the relevant product market and 'allege how the net effect of the alleged violation is to restrain trade in the relevant market ...'" *North Jersey Secretarial School, Inc. v. McKiernan*, 713 F.Supp. 577, 583 (S.D.N.Y.1989). Without an adequate definition of the relevant market, it is impossible for the Court to determine what effect, if any, the alleged restraint has on the market. *Id.* at 583–84. Moreover, a Section 1 claim cannot stand under the rule of reason absent proof of injury to competition in the relevant market. *Id.* Antitrust injury is a prerequisite to recovery because the antitrust laws were enact-

ed to protect competition, not competitors. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Count one of the complaint in no way defines or specifies the relevant market in which the Court is to assess defendants' alleged restraint of trade. There is no mention of either the relevant product market or of the geographical scope of such a market. Without these essential allegations, the Section 1 claim must be dismissed.

Finally, the complaint states only that plaintiff has suffered, and will suffer, damages resulting from its loss of Foodmart accounts in Massachusetts and Connecticut. While this loss may be a significant one for RSA, there is no factual allegation to support a claim of antitrust injury, that is, injury to competition in the relevant market. In *Blaine v. Meineke Discount Muffler Shop, Inc.*, 670 F.Supp. 1107, 1114 (D.Conn.1987), Judge Dorsey held that:

> The Rule of Reason requires not only that plaintiffs allege and prove anticompetitive effects, but additionally that the injury complained of be the type that the antitrust laws were designed to protect ... Under the Rule of Reason test, it is the unfair means which may have been employed by defendants that fall within the purview of the Sherman Act. The question is whether those means lessened competition. Mere allegations of loss of individual competitive ability are not sufficient. There must be some allegation of public injury to competition; a harmful effect on a more generalized market and not merely on a single supplier or purchaser. (citations omitted).

Because plaintiff in this case, even in light of the liberal pleading requirements, has not alleged antitrust injury, count one of the complaint must be dismissed.

**B. *Count Two—Robinson–Patman Act***

■ In count two of the complaint RSA asserts that defendants are liable under Section 2(a) of the Robinson–Patman Act, 15 U.S.C. section 13(a), because ConAgra offered a more favorable price and incentives to C & S to sell ConAgra products.

Section (a) of the Robinson–Patman Act provides, in pertinent part that:

> it shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality.... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefits of such discrimination, or with customers of either of them:
>
> \*  \*  \*  \*  \*  \*
>
> And provided further, That nothing herein contained shall prevent persons engaged in selling goods, wares or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade.

15 U.S.C. section 13(a).

■ First, with respect to defendant C & S, the Court notes that Section 2(a) liability attaches to a price discriminating seller and not to the purchaser of goods sold at a discriminatory price unless, pursuant to section 2(f), the purchaser knowingly induces or receives a discrimination in price which is prohibited by section 2(a). A section 2(f) violation is derivative in nature and must be accompanied by a section 2(a) violation. *Great Atlantic & Pacific Tea Company v. F.T.C.*, 440 U.S. 69, 99 S.Ct. 925, 59 L.Ed.2d 153 (1979).

Plaintiff has failed to allege that C & S knowingly induced or received a discrimination in price prohibited by section 2(a). Therefore, Count two must be dismissed as against defendant C & S.

Count two must also be dismissed against C & S and ConAgra because it contains no allegation of antitrust injury. In order to state a claim under section 2(a), plaintiff must show that defendants' actions would tend to either result in a substantial lessening of competition or to cre-

ate a monopoly in any line of commerce. *Interstate Cigar Co., Inc. v. Sterling Drug, Inc.*, 655 F.2d 29, 31 (2d Cir.1981). As was discussed above with respect to count one, the complaint does nothing more than allege that as a result of defendants' conduct RSA has lost one account for the distribution of one brand of pet supplies. There is no indication that any action by either defendant has had or is likely to have an injurious effect on commerce or competition in any relevant market. Thus, count two of the complaint must be dismissed.

## C.  Count Three—Connecticut Antitrust Violations

■■■ Count three of the complaint alleges that defendants' actions have violated the Connecticut Anti-Trust Act, Conn.Gen. Stat. Section 35–24, *et seq.* First plaintiff claims that defendants violated section 35–28(d) of the Connecticut statutes by engaging in conduct which amounted to an illegal refusal to deal. Section 35–28(d) prohibits contracts, combinations or conspiracies which "are for the purpose, or have the effect, of … (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person." In considering the application of this section, the Connecticut Supreme Court has ruled that section 35–28(d) merely codifies the federal case law regarding what constitutes a *per se* violation of Section 1 of the Sherman Act. *Elida, Inc. v. Harmor Realty Corp.*, 177 Conn. 218, 227, 413 A.2d 1226 (1979). Thus, the prohibitions of Section 35–28(d) apply only to *per se* illegal conduct, such as group boycotts or concerted refusals to deal involving horizontal competitors. *Id.* at 228, 413 A.2d 1226. Absent allegations of a group boycott or a concerted refusal to deal, the rule of reason is to be applied to the alleged restraint as it is under federal law. *Id.* at 229, 413 A.2d 1226.

In this case the only claim asserted is that ConAgra engaged in a vertical restraint of trade by choosing to distribute its products through one distributor, C & S, over another, RSA. Applying the rule of reason to this claim, this count must be

dismissed for the same reasons set forth above with relation to count one of the complaint. Significantly, this Court has previously dismissed the claim of a Connecticut dealer brought under section 35–28(d) on the ground that Section 35–28(d) does not prohibit a supplier from unilaterally choosing its own distributors. *McKeown Distributors, Inc. v. Gyp–Crete Corp.*, 618 F.Supp. 632 (D.Conn.1985).

■■■ Count three of plaintiff's complaint also appears to assert a price discrimination claim under Connecticut General Statutes Section 35–45(a). Section 35–45(a) is substantially identical to Section 2(a) of the Robinson–Patman Act and thus should be construed in light of federal precedent. *See Elida, Inc. v. Harmor Realty Corp.*, 177 Conn. at 226, 413 A.2d 1226. For the reasons set forth above with relation to the Section 2(a) Robinson–Patman claim in count two, this state law price discrimination claim must also be dismissed.

## D.  Count Four—Connecticut Unfair Trade Practices Act

■■■ Count four of the complaint alleges that ConAgra violated CUTPA by refusing to offer equivalent prices and terms to plaintiff. CUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42–110b(a). The plaintiff has neither alleged nor demonstrated that ConAgra engaged in any deceptive act; it claims, rather that ConAgra's termination of the agreement was unfair. CUTPA specifically provides that in construing Section 42–110b(a), the state courts "shall be guided by interpretations given by the Federal Trade Commission and the federal courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended." Conn.Gen.Stat. § 42–110b(b). In keeping with this command, the Connecticut Supreme Court has adopted the following factors, which were developed by the Federal Trade Commission, to determine whether a practice is "unfair":

(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Ivey, Barnum & O'Mara v. Indian Harbor Properties, Inc.,* 190 Conn. 528, 539 n. 13, 461 A.2d 1369 (1983). The only factual allegations contained in plaintiff's complaint are those alleging that ConAgra replaced RSA with C & S as its distributor of pet products to Foodmart stores in Connecticut and Massachusetts and that it offered C & S prices lower than those previously offered to RSA. Such allegations standing alone do not rise to the level of a CUTPA violation. Therefore, count four of the complaint must be dismissed.

### E. *Count Five—Connecticut Franchise Act*

 Count five of the complaint is a claim under the Connecticut Franchise Act, Conn.Gen.Stat. § 42–133e, *et seq.* This Act provides certain protections to franchisees as that term is defined therein. The Act defines a franchisee as one who: (1) has been granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate. *See* Conn.Gen.Stat. § 42–133e(b). The complaint in this case does not contain any allegations from which the Court could infer that RSA was a franchisee of ConAgra. Therefore, count five of the complaint must be dismissed for failure to state a claim upon which relief can be granted.

### F. *Count Six—Violation of Good Faith*

 Count six of the complaint alleges that ConAgra's termination of its relationship and its subsequent refusal to deal with RSA was a breach of ConAgra's duty to deal in good faith pursuant to Conn.Gen. Stat. § 42a–1–203. As previously noted, the only facts alleged by plaintiff are that ConAgra replaced RSA as its distributor to Foodmart stores in Connecticut and Massachusetts and offered the new distributor, C & S, a better deal than RSA had previously received. Indeed, RSA does not even allege the existence of a contract with ConAgra. Such conduct, without more, does not constitute a breach of any duty of good faith. Therefore, count six of the complaint must be dismissed.

### CONCLUSION

For the reasons set forth above, defendants' motions to dismiss the complaint are GRANTED. The Clerk is directed to dismiss this action and close this case in accordance with this ruling.