**EN VOGUE, Plaintiff,**

v.

**UK OPTICAL LTD. and British Optical Import Company, Defendants.**

**No. CV 93–1976 (ADS).**

United States District Court,
E.D. New York.

Feb. 14, 1994.

Cahn Wishod Wishod & Lamb, Melville, (Richard C. Cahn, Joel M. Markowitz, Howard M. Miller, of counsel), for plaintiff.

Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C., Mineola, (Richard Gabriele, of counsel), for defendant UK Optical Ltd.

Franklin & Gringer, P.C., Garden City, (Martin Gringer, of counsel), for defendant British Optical Import.

## OPINION AND ORDER

SPATT, District Judge:

The defendant UK Optical Ltd. ("UK Optical") moves to dismiss the Complaint as against it for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), and to dismiss the second cause of action in the Complaint alleging violation of the Robinson–Patman Act, 15 U.S.C. § 13, pursuant to Fed. R.Civ.P. 12(b)(6). UK Optical also seeks a protective order governing certain discovery requests pursuant to Fed.R.Civ.P. 26(c).

### BACKGROUND

The defendant UK Optical is a corporation organized under the laws of the United Kingdom, and is engaged in the manufacture of several types and models of designer eyeglass frames. UK Optical's principal place of business and corporate headquarters are located in England. The plaintiff En Vogue is a New York general partnership located in New York, and is engaged in the business of

importing and reselling optical frames throughout the United States.

On July 30, 1992, En Vogue entered into an Exclusive Distribution Agreement with the defendant UK Optical. According to the plaintiff, the parties negotiated the agreement at arms length and by telephone, and U.K. Optical's Director of Frame Business visited New York for the purpose of final execution of the agreement. Under the terms of the distribution agreement, En Vogue would be UK Optical's exclusive distributor in the continental United States for UK Optical's "Saville Row Collection" of gold-filled eye glass frames. UK Optical in turn, was obligated not to supply the eye glass frames to any other person in the continental United States during the term of the agreement. The agreement called for En Vogue to purchase a minimum of 10,000 units of certain eye glass frames from UK Optical for the year 1992–1993. The parties agreed that the law of the United Kingdom would govern the contract.

Soon after the execution of the distribution agreement, the parties began exchanging accusations that the other breached the agreement. En Vogue alleged that UK Optical breached the distribution agreement, because it sold eye-glass frames covered by the distribution agreement to one of En Vogue's competitors, the defendant British Optical Imports ("British Optical"), for distribution in the US. On the other hand, UK Optical alleged that En Vogue first repudiated the distribution agreement, because it never purchased the minimum volume of frames required by the agreement.

Unable to resolve the dispute, En Vogue commenced this action by filing its Complaint on May 4, 1993, alleging that UK Optical breached the terms of the distribution agreement. En Vogue also sought a preliminary injunction enjoining UK Optical from any further sales of the eye glass frames to British Optical. On June 4, 1993, this Court denied the plaintiff's motion for a preliminary injunction. UK Optical sent written notice on August 6, 1993 to En Vogue, stating that it was terminating the exclusive distribution agreement within ninety days, but that it would allow En Vogue to continue purchasing the eye glass frames on a C.O.D. basis.

The defendant UK Optical filed the instant motion seeking, *inter alia*, to dismiss the plaintiff's complaint as against it because of lack of personal jurisdiction over UK Optical. In support of this aspect of its motion, UK Optical enumerates a number of factors which, it argues, indicate that UK Optical has virtually no contacts with the state of New York. Included in these factors are the allegations that UK optical does not now, and has never: (1) been licensed or registered to do business in New York; (2) paid income taxes to New York; (3) had any real property interests in New York; (4) had an office in New York; (5) had any employees in New York; (6) had a telephone number or answering service in New York; (7) had a New York mailing address; (8) belonged to a trade association or group in New York; (9) had any bank account or security account in New York; (10) designated an agent for service of process in New York.

Moreover, UK Optical asserts that any connection to New York State established by the distribution agreement is tenuous, and does not justify personal jurisdiction over it. According to UK Optical, entering into the distribution agreement has not given it any greater contact with New York because: there have been no sales at all by U.K. Optical to En Vogue for shipment to New York since the execution of the distribution agreement in July, 1992; orders for eyeglass frames were sent by En Vogue to the United Kingdom and accepted there by UK Optical; payment for the orders was to be made by Pounds Sterling in England, not dollars in New York; the parties' choice of law was English law; and UK Optical's sales to EN Vogue constituted a "minuscule" portion of UK Optical's total sales of eye-glass frames, 1.34% in 1991 and .01% in 1992. Indeed, were it not for this distribution agreement, UK Optical asserts it would have no sales of eyeglass frames to companies located in New York.

**DISCUSSION**

1. *Personal Jurisdiction Over UK Optical*

Where a Court is asked to rule on a combination of Rule 12(b) defenses, it will

pass on the jurisdictional issues before considering whether a claim is stated in the complaint. *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir.1963). If the Court relies on the pleadings and affidavits alone, the plaintiff need only make a *prima facie* showing of jurisdiction in order to defeat the motion to dismiss. The pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Moreover, pursuant to Fed.R.Civ.P. 8(a)(1), a pleading need only contain a short and plain statement of the grounds upon which the court's jurisdiction depends.

Personal jurisdiction over a defendant in a diversity action is determined by reference to the relevant statutes of the forum state. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Under New York law, the Court must follow a two-step procedure in order to determine whether there is personal jurisdiction over a defendant: (1) the Court must determine whether New York Civil Practice Law and Rule ("CPLR") sections 301 or 302 provide a basis for personal jurisdiction, and (2) if they do, the Court must then conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction over the defendant would offend due process pursuant to *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 82 (2d Cir.1993).

Pursuant to CPLR § 301, the Court can exercise general jurisdiction over a non-domiciliary based on the defendant's "presence" within the state. The defendant is present if he is found to be "doing business" in the state. *Frummer v. Hilton Hotels, International, Inc.,* 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). "Doing business" has been equated with a continuous and systematic course of business by the defendant in New York. *Twine v. Levy,* 746 F.Supp. 1202, 1204 (E.D.N.Y.1990). A corporation that is licensed to do business in New York meets the criteria of "doing business" for purposes of personal jurisdiction under CPLR § 301. *Augsbury Corp. v. Petrokey Corp.,* 97 A.D.2d 173, 470 N.Y.S.2d 787, 789 (3d Dept.1983).

In the present case, the plaintiff admits that CPLR § 301 is not applicable to confer jurisdiction over the defendant UK Optical, because UK Optical is neither licensed to do business in New York, nor conducts a continuous and systematic course of business in New York. Rather, the plaintiff argues that personal jurisdiction is conferred upon UK Optical pursuant to New York's Long–Arm statute, CPLR § 302(a)(1). That section provides that a non-domiciliary is subject to personal jurisdiction if they, "transact business within the state, or contract anywhere to supply goods or services in the state," and if the cause of action arises out of the transaction or contract.

Specifically, En Vogue contends that because UK Optical contracted to supply goods to En Vogue in New York, for distribution in New York as well as throughout the United States, the requirements of section 302(a)(1) are met. En Vogue also contends that UK Optical transacted business in the state within the meaning of the first clause of section 302(a), because the exclusive distributorship agreement was negotiated and executed in New York, with the Director of Frame Business of UK Optical coming to New York to meet with representatives of En Vogue, execute the contract, as well as to attend a trade show in New York where marketing of the products was discussed.

## A. Personal Jurisdiction Pursuant to a Contract for the Supply of Goods in New York State.

Prior to 1979, the New York Long–Arm statute simply provided for personal jurisdiction where a defendant transacted any business within the state. Under the earlier Long–Arm statute, New York courts uniformally held that the mere shipment of goods into New York by a non-domiciliary who was never physically present in the state did not confer personal jurisdiction over the non-domiciliary. This rule, however, resulted in a gap of personal jurisdiction in cases where a contract was made outside of New York for

the shipment of goods into New York, but where the non-domiciliary seller or contracting party subsequently breached the contract by failing to perform. *See Petra Bank, supra,* 989 F.2d at 80; CPLR § 302, Practice Commentary C302:13 at 98 (McKinney 1990).

In order to rectify this gap in long-arm jurisdiction, the New York legislature extended the reach of the New York Long–Arm statute in 1979, by providing in section 302(a)(1) that personal jurisdiction over non-domiciliaries was permissible in cases where they contracted outside of the state to supply goods into the state. *See Alan Lupton Associates v. Northeast Plastics,* 105 A.D.2d 3, 482 N.Y.S.2d 647, 650–51 (4th Dept.1984); *Cleopatra Kohlique, Inc. v. New High Glass, Inc.,* 652 F.Supp. 1254, 1257–58 (E.D.N.Y. 1987); *cf. Petra Bank,* 989 F.2d at 81 (extension of long arm jurisdiction under section 302(a)(1) reaches a non-domiciliary's guaranty of payment of a promissory note).

Accordingly, today New York Courts may exercise personal jurisdiction over a non-domiciliary who contracts out of state to supply goods in the state, *even when the goods are never shipped or supplied to the state. See Lupton Associates, supra,* 482 N.Y.S.2d at 650. The only requirement is that the cause of action arise out of the contract. *See McGowan v. Smith,* 52 N.Y.2d 268, 272–73, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981); *Lupton Associates,* 482 N.Y.S.2d at 650; *Petra Bank, supra,* 989 F.2d at 80. A cause of action arises out of the contract when the plaintiff's claim is a direct consequence of the activity purposefully directed at New York by the defendant. *Tonns v. Spiegel's,* 90 A.D.2d 548, 455 N.Y.S.2d 125, 127 (2d Dept.1982).

The fact that title or risk of loss to the goods passed from the non-domiciliary to the claimant outside of New York, does not work to defeat jurisdiction. What matters is that the non-domiciliary contracted and intended to send the goods to New York. *Cleopatra, supra,* 652 F.Supp. at 1258. *Cf. Petra Bank,* 989 F.2d at 82 (where guarantee obligation on note was made payable in New York, fact that notes were made in Middle East and payable in Europe is of no jurisdictional significance). Moreover, if the territory envisioned by the contract includes New York, personal jurisdiction is proper. *Lupton Associates,* 482 N.Y.S.2d at 650 (personal jurisdiction found where contract called for exclusive distribution throughout northeast United States); *Hannex Corp. v. GMI, Inc.,* 1989 WL 23960 at *6 (E.D.N.Y. March 10, 1989) (personal jurisdiction found under section 302(a)(1) where contract's territory was entire United States).

The plaintiff argues that the requirements of section 302(a)(1) are met, and, therefore, there is personal jurisdiction over UK Optical. First, the plaintiff claims that the defendant agreed under the distribution agreement to supply goods to the plaintiff in New York, for distribution in New York and throughout the United States. Second, the plaintiff's cause of action arises out of a breach of the distribution agreement. On the other hand, UK Optical contends that personal jurisdiction is not warranted, because the mere shipment of goods into New York is not enough to confer jurisdiction. Moreover, UK Optical contends it never shipped any goods into New York after the contract was executed in July, 1992. UK Optical explains that the three invoices offered by En Vogue as evidence of shipment of goods into New York, which are dated after July, 1992, were never filled, or if filled, involved either orders placed prior to the execution of the distribution agreement or demonstration models not covered by the agreement.

It is the Court's view that the factual situation in this case embodies the quintessence of why the CPLR was changed to accommodate personal jurisdiction over non-domiciliaries never present in the state who contract to sell goods in New York. The defendants miss the underlying purpose of section 302(a)(1) by arguing that because the contract was breached, they never shipped the goods to New York and, therefore, are not amenable to personal jurisdiction. That is precisely why personal jurisdiction exists in this case: because a claim has arisen with respect to a contract, pursuant to which goods were intended to be, but never were, shipped to the plaintiffs in New York. To

assert that there is no jurisdiction over the defendants because, due to a breach, the goods were not shipped, is to contravene the very basis for the reach section 302(a)(1). The defendant UK Optical intentionally and knowingly contracted and intended to send the eye-glass frames into New York, for sale and redistribution in the New York area and throughout the continental United States. That purposeful activity directed at New York is sufficient to confer personal jurisdiction pursuant to the statute.

Although the plaintiff has offered evidence, which the Court must accept as true when deciding a motion to dismiss under Rule 12(b), that several orders of eye glass frames were shipped into New York, the fact that the goods may not have been shipped to New York does not defeat personal jurisdiction. *Lupton Associates,* 482 N.Y.S.2d at 650. Accordingly, the Court has personal jurisdiction over the defendant UK Optical pursuant to CPLR § 302(a)(1).

## B. Long–Arm Jurisdiction must comply with Due Process Concerns.

To meet the demands of due process, a defendant's contacts with the forum state must be such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Melendez v. Professional Machine & Tool Company, Ltd.,* 190 A.D.2d 657, 593 N.Y.S.2d 258 (2d Dept.1993) (quoting *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158). When a foreign corporation "purposefully avails itself of the privilege of conducting activities in the forum state, it can reasonably anticipate being subject to suit there." *Melendez,* 593 N.Y.S.2d at 259 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1986)). The drafters of the 1979 changes to the CPLR amendment of section 302(a)(1) deemed the shipment of goods into the state "to be an act by which a non-domiciliary avails itself of the privilege of conducting activities in the State." *Island Wholesale Wood Supplies, Inc. v. Blanchard Inds., Inc.,* 101 A.D.2d 878, 476 N.Y.S.2d 192, 194 (2d Dept.1984); *Melendez,* 593 N.Y.S.2d at 259.

The plaintiff alleges in the Complaint that UK Optical shipped eye-glass frames pursuant to the distribution agreement to New York. The plaintiff also alleges that negotiations between the parties over the distribution agreement were conducted in New York, at arms length and by telephone. Finally, the plaintiff alleges that UK Optical's Director of Frame Business came to New York four times to discuss the contract, and brought the final version of the agreement to New York for execution. The defendant denies or explains each of these allegations, except that UK Optical admits that (1) some negotiations were conducted by facsimile transmissions into New York, (2) two of the orders on invoices dated after July, 1992 were actually shipped to New York, though one order contained promotional goods, while the other contained an order placed just prior to the execution of the agreement, and (3) UK Optical's Director of Frame Business did come to New York with the final version of the agreement for execution, though that was not his sole purpose in coming to New York at that time.

The Court again reiterates that on a motion to dismiss pursuant to Rule 12(b), the allegations in the complaint, and any doubts, must be construed in favor of the plaintiff. *CutCo Industries, supra,* 806 F.2d at 365. Based on the allegations in the Complaint, the plaintiff has made a *prima facie* showing that personal jurisdiction over UK Optical comports with traditional due process concerns of "notice and fair play." Therefore, personal jurisdiction over the defendant is warranted under CPLR § 302(a)(1).

However, the Court notes that, *even if* the defendant's contentions and explanations are taken into consideration, the defendant does not contest that some negotiations were conducted by facsimile transmissions into New York, that some goods—be they only promotional—were shipped under the contract to New York, and that the Director of Frame Business for UK Optical did come to New York with the purpose, though not the sole purpose, of executing the final version of the distribution agreement. These three uncontested facts are enough for the Court to conclude that the totality of UK Optical's

contacts with New York demonstrate that UK Optical purposefully availed itself of the privileges of this forum, and could have expected to have been hailed into the forum's courts on account of the contract. *See Lupton Associates, supra*, 482 N.Y.S.2d at 650 (citing examples of "single acts" by defendants which have conferred personal jurisdiction over them in New York).

Accordingly, the Court finds that, as a matter of law, the plaintiff has sufficiently alleged facts according it personal jurisdiction over the defendant UK Optical, pursuant to CPLR § 302(a)(1), and that the constitutional demands of due process are met.

### 2. *En Vogue's Claim Under the Robinson–Patman Act.*

En Vogue's second cause of action alleges that, by selling to the defendant British Optical, at a lower price, designer eye-glass frames that are similar to the ones covered by the distribution agreement between En Vogue and UK Optical, UK Optical violated the provisions of the Robinson–Patman Act, 15 U.S.C. § 13. That Act forbids price discrimination among purchasers of similar commodities in interstate commerce.

The relevant provision of the Robinson–Patman Act states that:

(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... where such commodities are sold for ... resale within the United States ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a).

In order to state a claim under section 13(a), the plaintiff must show that the defendants' actions would tend either to result in a substantial lessening of competition or to create a monopoly in any line of interstate commerce. *Retail Service Assoc. v. Congra Pet Products*, 759 F.Supp. 976, 980–81 (D.Conn.1991) (citing *Interstate Cigar Co., Inc. v. Sterling Drug, Inc.*, 655 F.2d 29, 31 (2d Cir.1981)).

En Vogue has pleaded in its complaint that it and the defendant British Optical are engaged in the business of distributing optical frames in interstate commerce; that En Vogue and British Optical are in direct competition for market share in the optical industry; that En Vogue and British Optical distribute products of like grade and quality; that En Vogue has lost profits and customers due to U.K. Optical's discriminatory pricing; and that such discriminatory pricing has caused En Vogue competitive injury, and hampered its ability to effectively compete with British Optical for market share in the United States.

The Court notes that on a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). Moreover, in assessing the sufficiency of a pleading on a motion to dismiss, it is well settled that "all factual allegations in the complaint must be taken as true," *La Bounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff, *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom. Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

En Vogue has pleaded a cause of action for price discrimination under section 13(a) that is sufficient to withstand a motion to dismiss under Rule 12(b)(6). The facts of this case are distinguishable from those in *Congra Pet Products, supra*, where the court dismissed a claim under section 13(a) pursuant to Rule 12(b)(6), because the complaint did nothing more than allege that the plain-

tiff had lost one account for distribution, and there was "no indication that any action by either defendant has had or is likely to have an injurious effect on commerce or competition in any relevant market." *Id.* 759 F.Supp. at 981. In this case, the Court can reasonably infer from En Vogue's allegations that "the defendants' actions would result in a substantial lessening of competition" in the relevant market of designer eye-glass frames, and that such actions were committed in the course of interstate commerce.

The defendant UK Optical argues that the requirements of the section 13(a) are not met in this case, because there were no *actual* sales by UK Optical to En Vogue under the distribution agreement. According to UK Optical, in order to state a claim for price discrimination under section 13(a), there must be actual sales to purchasers. *See Package Closure Corp. v. Sealright Co.,* 141 F.2d 972, 979–80 (2d Cir.1944); *Jones v. Metzger Dairies, Inc.,* 334 F.2d 919, 924–25 (5th Cir.1964).

The Court disagrees with UK Optical's contention for two reasons. First, as already explained in the discussion of personal jurisdiction, above, UK Optical admits that two of the orders on invoices dated after July, 1992 were actually shipped to New York, although it explains these shipments away by alleging that one order contained promotional goods, while the other contained an order placed just prior to the execution of the agreement. Thus, the Court has a basis in fact to infer that actual sales pursuant to the contract did occur.

Second, actual sales to En Vogue are not necessary in order for the plaintiff to properly plead a cause of action under section 13(a) in this case. In *Aluminum Company of America v. Tandet,* 235 F.Supp. 111 (D.Conn. 1964), the court considered the very same argument presently before this Court: whether there has to be an actual sale to a purchaser in order to have a claim under section 13(a). In *Tandet,* the parties entered into an agreement, whereby the plaintiff would sell aluminum products to the defendant over a five year period. The defendant placed an order under the contract, but the plaintiff refused to ship the order because of

a dispute over price. The plaintiff sued for breach of contract, and the defendant counterclaimed by alleging price discrimination under section 13(a), because the plaintiff was selling aluminum to the defendant at a higher price than it was charging other purchasers. The plaintiff argued that the counterclaim should be dismissed as a matter of law, because there was no actual sale to the defendant under the contract.

The *Tandet* court held that an actual sale was not necessary in order for the defendant to state a claim under section 13(a), because under the terms of the contract the parties were in the relationship of a seller and buyer. That contractual relationship already contemplated a completed transaction, pursuant to which the defendant was a purchaser, even if an actual sale had not been made. The *Tandet* court distinguished *Package Closure, supra,* and other cases holding that an actual sale to the purchaser is necessary in order to plead a claim under section 13(a), on the ground that these cases involved companies with no contractual relationships, where the alleged price discriminator refused to deal at all with the prospective purchaser. *See Tandet,* 235 F.Supp. at 114.

In this case, the parties have a contractual relationship that, similar to the relationship in *Tandet,* contemplated a completed transaction of minimum purchases, based on En Vogue's ordering invoices as the exclusive distributor. As such, En Vogue was a purchaser within the meaning of section 13(a), and can rightfully allege a cause of action for price discrimination, even if there was no actual sale. *Accord, Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 617 F.2d 468, 471 (7th Cir.1980) (in considering "purchaser" within meaning of section 13(e), court held: "[A] consummated transaction in the sense of a fully executed contract is not required. A complaining party may become a 'purchaser' ... solely by entering into a contract for the purchase of goods for resale.").

As a matter of policy, the Court notes that if it were to hold otherwise and require an actual sale in order for a party to state a claim under section 13(a), then a manufacturer could sell to a distributor's competitors at a lower price, and be immune from the dis-

tributors' price discrimination claim because the distributor was unwilling to proceed with any purchases requiring payment of the higher price. This result would leave a distributor with only a breach of contract remedy, allow the manufacturer to discriminate in pricing with impunity, and undercut the very strength and purpose of the Robinson–Patman Act. In this Court's view, Congress did not intend this type of outcome when it enacted the Robinson–Patman Act.

Accordingly, as a matter of law, the Court holds that the plaintiff has sufficiently pleaded a cause of action for price discrimination under section 13(a). The defendants' motion to dismiss the cause of action under the Robinson–Patman Act is denied.

### CONCLUSION

The defendant UK Optical's motion to dismiss the complaint as against it for lack of personal jurisdiction, and to dismiss the second cause of action in the Complaint alleging violation of the Robinson–Patman Act, is denied. The Court finds that, as a matter of law, as alleged in the Complaint personal jurisdiction over the defendant UK Optical is appropriate, pursuant to CPLR § 302(a)(1), and the constitutional demands of due process are met. Additionally, the Court holds that, as a matter of law, the plaintiff has sufficiently pleaded a cause of action for price discrimination under 15 U.S.C. § 13(a).

UK Optical also seeks a protective order governing certain discovery requests pursuant to Fed.R.Civ.P. 26(c). This aspect of its motion is referred for determination to United States Magistrate Judge Michael L. Orenstein.

**SO ORDERED.**