**LAUMANN MANUFACTURING CORPORATION, Plaintiff,**

v.

**CASTINGS USA, INC., Defendant.**

**No. CV 93 5866 (ADS).**

United States District Court,
E.D. New York.

Feb. 9, 1996.

---

**714**

Ezra & Rowe, Elmont, New York by Joel S. Ezra, for Plaintiff.

Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C., Mineola, New York by Brian S. Conneely, Karen Michal, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

The defendant, Castings USA, Inc. ("Castings" or the "defendant"), moves to dismiss the Complaint for lack of personal jurisdiction and improper venue, pursuant to Fed. R.Civ.P. 12(b)(2) and (3), respectively, or, in the alternative, to transfer the case to the United States District Court for the Eastern District of Arkansas, pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

Castings is a corporation organized under the laws of the State of Arkansas, and is engaged in the business of manufacturing casting molds. Castings' principal place of business and corporate headquarters are located in Pine Bluffs, Arkansas. The plaintiff, Laumann Manufacturing Corporation ("Laumann" or the "plaintiff"), is a New York corporation located in the State of New York and is engaged in the business of manufacturing.

In April 1993, Laumann contacted five or six manufacturers throughout the country, including Castings, to obtain price quotations for the manufacture and sale of "arms" to Laumann in New York. The function of these "arms" is not clear from the parties' papers. The parts were to be shipped to New York to be used to fulfill a contract between Laumann and the Department of the Army of the United States Government.

The plaintiff sent to each of the bidding manufacturers a copy of the government design for the aforementioned part, as well as a list of the terms and conditions to govern the contract. According to the plaintiff, Castings submitted, by letter, on April 21, 1993, a quotation for consideration, and a list of terms applicable to any resulting agreement between the parties. Laumann placed an order with Castings by a Purchase Order dated May 21, 1993. According to the plaintiff, the parties negotiated the agreement at arm's length. Under the terms of the contract, Castings would manufacture 625 "arms," pattern number 12325801, and would fulfill the order in accordance with the terms set forth by both Laumann and Castings, therefore complying with the standards required by the Department of the Army. The parties agreed that the law of the State of New York would govern the contract.

In July 1993 Castings indicated that an error had been made with regard to the price of the aforementioned "arms." After additional negotiation by telephone and written correspondence between the parties, a subsequent agreement was reached where Laumann agreed to pay a higher price for the parts than originally quoted by Castings.

Soon after the execution of the contract, Castings shipped to New York, one "arm" for inspection and approval. Laumann rejected the part due to numerous alleged manufacturing defects. According to the plaintiff, for a period of approximately one year, numerous telephone calls and correspondence transpired between Laumann and Castings due to manufacturing defects discovered in the "arms" shipped to Laumann. The plaintiff alleges that constant delays and defective "arms" forced it to incur costs and partial termination of its contract with the depart-

ment of the Army. On the other hand, defendant Castings denies that the "arms" sent to Laumann were defective and denies that Castings caused the partial termination of Laumann's contract with the Department of the Army.

Subsequently, Laumann commenced this action by filing its complaint in November 1994 in the Supreme Court of the State of New York, Nassau County, alleging that Castings breached the terms of the contract. The defendant filed a Notice of Removal under 28 U.S.C. § 1446, based on diversity jurisdiction.

Castings filed the instant motion seeking to dismiss the complaint because the Court lacks personal jurisdiction over the defendant pursuant to Fed.R.Civ.P. 12(b)(2) and improper venue pursuant Fed.R.Civ.P. 12(b)(3) or, in the alternative, to transfer this matter to the United States District Court for the Eastern District of Arkansas. In support of its lack of personal jurisdiction argument, Castings enumerates a number of factors which indicate that Castings has virtually no contacts with the State of New York. Included in these factors are that Castings does not now, and has never: (1) had a place of business in the State of New York, (2) had any employees in the State of New York, (3) had a bank account or finances in the State of New York, (4) been licensed or registered to do business in New York, nor (5) attended any trade shows or conventions in New York.

With regard to the Rule 12(b)(3) motion for dismissal based on improper venue, the defendant articulates that the plaintiff has not satisfied the applicable venue statute, 28 U.S.C. § 1391. Castings does not reside in the Eastern District of New York; no substantial part of the events or omissions giving rise to the claim occurred in the district; Castings is not subject to personal jurisdiction in New York; and there is another district in which this action may be brought, the Eastern District of Arkansas.

In the alternative, the defendant Castings, pursuant to 28 U.S.C. § 1404(a), moves to have the action transferred to the Eastern District of Arkansas. Castings contends that the action could have been brought in the Eastern District of Arkansas, because, in Castings' view, the location of the operative events took place in Arkansas. Moreover, the increased level of convenience of the parties and witnesses, and the trial efficiencies of the respective courts' dockets, also warrants a transfer of venue.

## II. DISCUSSION

### A. *PERSONAL JURISDICTION OVER DEFENDANT*

Prior to discussing the issue presented by the instant motion, the court will set forth several general principles which apply to motions challenging personal jurisdiction. If the court relies on the pleadings and affidavits alone, the plaintiff need only make a prima facie showing of jurisdiction in order to defeat the motion to dismiss. *Welinsky v. Resort of World D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988). Moreover, the pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Hoffritz for Cutlery, Inc. v. Amajac Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

Personal jurisdiction over a defendant in a diversity action is determined by reference to the relevant statutes of the forum state. *Amajac,* 763 F.2d at 57. Under New York law, the court must follow a two-step procedure in order to determine whether there is personal jurisdiction over a defendant: (1) the Court must determine whether New York Civil Practice Law and Rules ("CPLR") sections 301 or 302 provide a basis for personal jurisdiction, and (2) if they do, the Court must then conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction over the defendant would offend due process pursuant to *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *En Vogue v. UK Optical Ltd.,* 843 F.Supp. 838, 841 (E.D.N.Y.1994).

■ Pursuant to CPLR section 301, the court may exercise general jurisdiction over a non-domiciliary based on the defendant's "presence" within the state. A defendant is present if he is found to be "doing business"

in the state. *Frummer v. Hilton Hotels, International, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). "Doing Business" has been equated with a continuous and systematic course of business by a defendant in New York. *Twine v. Levy*, 746 F.Supp. 1202, 1204 (E.D.N.Y.1990). A corporation that is licensed to do business in New York meets the criteria of "doing business" for purposes of personal jurisdiction under CPLR section 301. *Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 175, 470 N.Y.S.2d 787, 789 (3d Dep't.1983).

In the instant case, the plaintiff does not assert that CPLR section 301 confers jurisdiction over the defendant, because Castings is neither licensed to do business in New York, nor does it conduct a continuous and systematic course of business in New York. Rather, the plaintiff argues that personal jurisdiction is conferred upon Castings pursuant to New York's Long–Arm statute, CPLR section 302(a)(1). That section provides that a non-domiciliary is subject to personal jurisdiction if it "transacts business within the state, or contracts anywhere to supply goods or services in the state" and if the cause of action arises out of the transaction or contract. N.Y.Civ.Prac.L. & R. § 302(a)(1) (McKinney 1991).

Specifically, the plaintiff contends, first, that because Castings contracted to supply goods to Laumann in New York, and the breach of contract claim arose out of that contract to supply goods to New York, the requirements of section 302(a)(1) are met. Second, Laumann contends that Castings transacted business in the State of New York within the meaning of the first clause of section 302(a)(1), as demonstrated by the totality of the defendant's contacts and purposeful acts within the state.

### 1. Personal jurisdiction pursuant to a "contract for the supply of goods in New York state"

■ Prior to 1979, the New York Long–Arm Statute provided for personal jurisdiction only where a defendant transacted any business within the state. *En Vogue*, 843

F.Supp. at 842. Under this version of the Long–Arm statute, New York courts uniformly held that the mere shipment of goods into New York by a non-domiciliary, who was never physically present in the state, did not confer personal jurisdiction over the non-domiciliary. *En Vogue*, 843 F.Supp. at 842. This approach resulted in a gap in personal jurisdiction cases where a contract was made outside of New York for the shipment of goods into New York, and the non-domiciliary seller or contracting party subsequently breached the contract by failing to perform. *En Vogue*, 843 F.Supp. at 843; See also *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir.1993); N.Y.Civ.Prac.L. & R. § 302, Joseph M. McLaughlin, Practice Commentary C302:13.

However, in 1979, the New York legislature amended section 302(a)(1), in order to extend the reach of the New York Long–Arm statute, by providing that personal jurisdiction over non-domiciliaries was permissible in cases where they contracted outside of the state to supply goods in the state. *En Vogue*, 843 F.Supp. at 843; *see also Alan Lupton Assocs, Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 482 N.Y.S.2d 647, 650–51 (4th Dep't.1984); *Cleopatra Kohlique, Inc. v. New High Glass, Inc.*, 652 F.Supp. 1254, 1257–58 (E.D.N.Y.1987).

Therefore, today, "New York Courts may exercise personal jurisdiction over a non-domiciliary who contracts out of state to supply goods in the state, even when the goods are never shipped or supplied to the state." *En Vogue*, 843 F.Supp. at 843; *see also Alan Lupton*, 482 N.Y.S.2d at 650. The only necessary prerequisite is that the claim must arise out of the contract to supply goods to New York. *En Vogue*, 843 F.Supp. at 843; *see also McGowan v. Smith*, 52 N.Y.2d 268, 272–73, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981); *Alan Lupton*, 482 N.Y.S.2d at 650. For instance, a cause of action arises out of the contract when the plaintiff's claim is directly related to the activity purposefully directed at New York by the defendant. *En Vogue*, 843 F.Supp. at 843; *Tonns v. Spiegel's*, 90 A.D.2d 548, 455 N.Y.S.2d 125, 127 (2d Dep't.1982). In summary, the amendment abrogated the "mere shipment rule",

and provides for jurisdiction where a non-domiciliary enters into a contract to do work in or send goods into New York so long as the cause of action arises out of the contract. *Alan Lupton*, 482 N.Y.S.2d at 650; N.Y.Civ. Prac.L. & R. § 302, Joseph M. McLaughlin, Practice Commentary C302:13 at 53–54.

The fact that title or risk of loss to the goods passed from the defendant to the plaintiff outside of New York, *i.e.*, Arkansas, does not defeat personal jurisdiction. *En Vogue*, 843 F.Supp. at 843. The key issue is that the nondomiciliary contracted and intended to send goods to New York. *En Vogue*, 843 F.Supp. at 843; *Kohlique*, 652 F.Supp. at 1258. The statute does not indicate that the terminology contained in section 301(a)(2), " 'supply goods . . . in the state[,]' was meant to refer to the law of sales" for definition or explanation. *Foster Importing, Co. v. Creative Food Imports, Ltd.*, No. 83 Civ. 8124–CSH, 1984 WL 3657, at *1 (S.D.N.Y. March 13, 1984) (recognizing that shipping goods F.O.B. Spain, which would shift the risk of loss on the goods in Spain rather than New York, would not defeat long arm jurisdiction). The Court prefers to believe that the legislature intended that "supply" would be used in its common sense meaning: "to provide for goods to enter and be used in New York." *Foster Importing Co.*, 1984 WL 3657 at *1. This court does not believe that the New York State legislature intended to allow potential defendants to escape the reach of the Long–Arm statute by inserting out-of-New York State F.O.B. terms into their contracts.

In the instant case, the plaintiff argues that the requirements of section 302(a)(1) are met and therefore, this court has personal jurisdiction over the defendant Castings. First, the plaintiff asserts that the defendant contracted with Laumann in New York. Second, the plaintiff's cause of action does, indeed, arise out of the breach of the very contract at issue. On the other hand, Castings contends that personal jurisdiction is not warranted because the defendant did not ship goods into New York at all. In fact, Castings asserts that the F.O.B. Arkansas clause in the contract, passed title and risk of loss to Laumann in Arkansas, upon delivery of the goods to the common carrier. Thus, Castings asserts that it did not ship goods into New York and is not subject to personal jurisdiction in New York, pursuant to CPLR § 302(a)(1).

It is this Court's view that the factual situation in this case exemplifies the reasons why the New York legislature amended the CPLR to allow expansion of personal jurisdiction to include non-domiciliaries never present in the state who contract to sell goods in New York. *En Vogue*, 843 F.Supp. at 843. The defendant's reliance on the F.O.B. Arkansas clause in the contract, which according to the law of sales transferred the risk of loss and title to the plaintiff in Arkansas, illuminates the defendant's misconception of the statute and the reasoning behind it. In fact, this misconception is clearly evident by the defendant's reliance on *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456 (E.D.N.Y.1986), *Paradise Products Corp., v. Allmark Equipment Co.*, 138 A.D.2d 470, 526 N.Y.S.2d 119, and *SBR Realty Corp., v. Pave–Mark Corp.*, 175 A.D.2d 240, 572 N.Y.S.2d 705 (2d Dep't.1991).

Castings cites *Lemme*, which held that "[w]hen a foreign corporation sells goods F.O.B. out-of-state, it does not, under section 302(a)(1), perform its contract in New York." *Lemme*, 631 F.Supp. at 459. In that case, the *Lemme* Court relied on the Second Circuit opinion in *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 588–89 (2d Cir. 1965), for its reasoning on the F.O.B. issue. However, in *Agrashell*, the Second Circuit was applying the "transacting business" prong of section 302(a)(1), which was the sole prong, prior to the 1979 amendment to the statute that added the "contracting anywhere" language. *Cavalier Label Co., v. Polytam, Ltd.*, 687 F.Supp. 872, 877, n. 2 (S.D.N.Y.1988). Thus, the *Lemme* court's "reliance on *Agrashell* is . . . misplaced." *Cavalier Label Co.*, 687 F.Supp. at 877 n. 2. This court will follow the *Cavalier* and *Kohlique* cases, which stand for the proposition that an out-of-state F.O.B. designation in a contract to deliver goods into New York State does not foreclose operation of the "contracts anywhere" prong of § 302(a)(1). *Cavalier Label Co.*, 687 F.Supp. at 877 n. 2;

*Kohlique, Inc.,* 652 F.Supp. at 1258; *Foster Importing, Co.,* 1984 WL 3657 at *1. Therefore, this Court holds that an F.O.B. out-of-state designation does not preclude Castings from contracting with Laumann out of state, to supply goods in New York, thereby subjecting it to personal jurisdiction by the New York state courts.

To argue that this court does not have personal jurisdiction over the defendant because of F.O.B. Arkansas language in the contract "is to contravene the very basis for the jurisdiction reach of section 302(a)(1)." *En Vogue,* 843 F.Supp. at 843. The defendant Castings "intentionally and knowingly contracted and intended to send" and did send the contracted goods, "arms" into New York. *Id.* "That purposeful activity directed at New York is sufficient to confer personal jurisdiction pursuant to the statute." *Id.* Accordingly, the Court has personal jurisdiction over the defendant Castings pursuant to CPLR § 302(a)(1).

### 2. Long-arm jurisdiction must comply with due process concerns

■ Based on the court's aforementioned analysis, the New York State Long–Arm statute confers personal jurisdiction over Castings to adjudicate Laumann's breach of contract claim. Now, the court must ensure that the "state statute under the facts of the instant case is consistent with the requirements of due process." *Cavalier Label Co., Inc. v. Polytam, Ltd.,* 687 F.Supp. 872, 880 (S.D.N.Y.1988). Due process "requires that a defendant have sufficient minimum contracts with the forum state such that the maintenance of the suit does not offend 'traditional notion of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting, *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

In the watershed case of *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court held that an Oklahoma state court did not have personal jurisdiction over a New York automobile dealer who had sold a car to the plaintiff in New York that was later involved in an accident in Oklahoma. *World–Wide Volkswagen, Corp.,* 444 U.S. at 297, 100 S.Ct. at 567. It was insufficient that it might be considered foreseeable that the car sold in New York would pass through Oklahoma. *World–Wide Volkswagen Corp.,* 444 U.S. at 295–96, 100 S.Ct. at 566–67. The defendants had no contacts or connections with Oklahoma such that they "could reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567. Personal jurisdiction cannot properly be based on the "mere 'unilateral activity of those who claim some relationship with a nonresident.'" *World–Wide Volkswagen Corp.,* 444 U.S. at 298, 100 S.Ct. at 567, quoting, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

However, when a foreign corporation "purposefully avails itself of the privilege of conducting activities in the forum state, it can reasonably anticipate being subject to suit there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567. Unlike the petitioner in *World–Wide Volkswagen,* Castings purposefully contracted with a New York corporation, Laumann, located in New York, to supply goods, "arms," in New York. Castings manufactured the "arms" in its Arkansas facility and then shipped them to Laumann in New York. Because of its contract with Laumann to ship goods into New York, Castings is deemed to have the requisite minimum contacts with New York state so as to satisfy due process concerns. Based on these contacts, it is consistent with the traditional notion of fair play that Castings could have reasonably expected to be haled into a New York court. The drafters of the 1979 changes to § 302(a)(1) of the CPLR considered "the shipment of goods into the State of New York to be an act by which a non-domiciliary avails itself of the privilege of conducting activities in the state." *Island Wholesale Wood Supplies, Inc. v. Blanchard Inds., Inc.,* 101 A.D.2d 878, 476 N.Y.S.2d 192, 194 (2d Dep't.1984); *En Vogue,* 843 F.Supp. at 844.

Accordingly, the plaintiff has established a prima facie case that personal jurisdiction

over defendant Castings comports with traditional due process concerns of "notice and fair play." Therefore, based on the facts of the instant case, personal jurisdiction over Castings under CPLR § 302(a)(1) passes constitutional muster.

## B. DEFENDANT'S MOTION TO TRANSFER FOR IMPROPER VENUE

■ In the instant action for breach of contract, venue is governed by the general venue statute, 28 U.S.C. § 1391 (West Supp. 1991). The plaintiff contends that venue is proper in the Eastern District of New York, pursuant to section 1391(a)(2), because a substantial part of the events giving rise to the breach of contract claim occurred within this district, where the plaintiff's offices are located and where the plaintiff conducts its business. Section 1391(a)(2) provides that a civil action wherein jurisdiction is founded only on diversity of citizenship, may, except as otherwise provided by law, be brought only in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391(a)(2).

On the other hand, Castings asserts that venue is not proper in this district. Castings contends that the proper district is the Eastern District of Arkansas. The defendant contends that none of the requirements of the applicable venue statute have been satisfied. Specifically, venue cannot be established, pursuant to section 1391(a)(1), (2), or (3) because Castings does not reside in the Eastern District of New York, no substantial part of the events or omissions occurred in this district, and there is another district where venue is proper, namely, the Eastern District of Arkansas. Moreover, Castings contends that the Eastern District of New York is an improper venue pursuant to section 1391(c), because, it claims that Castings is not subject to personal jurisdiction in New York.

It is this court's view that the Eastern District of New York is the proper venue to adjudicate this dispute, however not for the reasons relied upon by the plaintiff. Section 1391(a)(1) provides in pertinent part: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... a judicial district where any defendant resides, if all defendants reside in the same state." 28 U.S.C. § 1391(a). Pursuant to 28 U.S.C. § 1391(c), a corporate defendant is considered a resident of a judicial district if it is subject to personal jurisdiction in that particular district at the time the action is commenced. 28 U.S.C. § 1391(c). The official commentary to § 1391(c) explains that, "anything that would make the corporation amenable to jurisdiction in that district, or permit extraterritorial service of the court's summons ... would *ipso facto* make the district a proper venue as well." Commentary on Section 1391, David D. Siegal, 28 U.S.C. § 1391. Essentially, section 1391(c) "equates jurisdiction with venue, for corporate defendants." *Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,* 779 F.Supp. 335, 337 (S.D.N.Y.1991). Thus, Castings is deemed to reside in the Eastern District of New York because as previously discussed, the requirements of personal jurisdiction have been satisfied. *Bicicletas Windsor, S.A. v. Bicycle Corporation of America,* 783 F.Supp. 781, 785 (S.D.N.Y.1992). As such, venue is proper in this district. Accordingly, the defendant's motion to dismiss based on improper venue is denied.

## C. DEFENDANT'S MOTION TO TRANSFER VENUE TO ANOTHER DISTRICT

In the alternative, Castings moves to transfer the entire action to the Eastern District of Arkansas. A motion to transfer venue from one federal district court to another, when venue is initially proper, is governed by 28 U.S.C. § 1404(a), which provides in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil case to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (West Supp.1988); *Filmline (Cross–Country) Prods. v. United Artists,* 865 F.2d 513, 520 (2d Cir.1989).

The goal of 28 U.S.C. § 1404(a) "is to prevent waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), quoting, *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). The inquiry on a motion to transfer is two-fold. The first issue is whether the action sought to be transferred is one that "might have been brought" in the district court in which the moving party seeks to have the case litigated, namely, the transferee court. If the initial threshold question is answered affirmatively, the court must then look to whether, "the convenience of parties and witnesses" and "the interest of justice", weighs in favor of a transfer to the proposed district. *Modern Computer Corp. v. Hsi Ma,* 862 F.Supp. 938, 947–48 (E.D.N.Y.1994); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 986 (E.D.N.Y.1991); *Schneider v. Sears,* 265 F.Supp. 257, 261 (S.D.N.Y.1967).

In putting forth a § 1404(a) motion to transfer, the moving party has the "burden to clearly establish that a transfer is appropriate and that the motion should be granted." *Modern Computer Corp.,* 862 F.Supp. at 948; *see also Factors Etc. Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218–19 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Arrow Elec., Inc. v. Ducommun, Inc.,* 724 F.Supp. 264, 265 (S.D.N.Y.1989), quoting, *Morales v. Navieras de Puerto Rico,* 713 F.Supp. 711, 712 (S.D.N.Y.1989); *Schneider,* 265 F.Supp. at 263. The moving party must support the motion with an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including "the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Modern Computer Corp.,* 862 F.Supp. at 948; *see also Factors,* 579 F.2d at 218; *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1321 (S.D.N.Y.1989).

Moreover, courts have employed a variety of factors that assist in determining whether to transfer a case to another district. However, none of the criteria employed are individually dispositive. *Modern Computer Corp.,* 862 F.Supp. at 948. In considering a motion to·transfer, the plaintiff's choice of forum should not be disturbed by the court unless the following criteria weighs strongly in defendant's favor. *Schwartz v. R.H. Macy's, Inc.,* 791 F.Supp. 94, 95 (S.D.N.Y. 1992). These criterion include: (1) convenience of the parties; (2) convenience of witness; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances. *Modern Computer Corp.,* 862 F.Supp. at 948; *see also Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,* 745 F.Supp. 993 (S.D.N.Y.1990); *Miller v. County of Passaic,* 699 F.Supp. 409, 411 (E.D.N.Y. 1988), citing, *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1946); *Schneider,* 265 F.Supp. at 263.

However, most importantly, when a section 1404(a) motion to transfer an action is submitted to the court, the decision whether or not to transfer venue is left to the sound discretion of the district court. *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989); *Modern Computer Corp.,* 862 F.Supp. at 948. That discretion will not be disturbed upon appeal without a clear showing of abuse. *Filmline (Cross–Country) Prods., Inc.,* 865 F.2d at 520.

In the instant action, the defendant contends that the Eastern District of Arkansas is more convenient. Initially, Castings asserts that it satisfied the threshold question, since this instant litigation could have been brought in the Eastern District of Arkansas. Second, the defendant contends that because the contract was not negotiated in New York and the manufactured "arms" were shipped F.O.B. Arkansas, the location of the operative events were Arkansas.

Third, the defendant contends that it is more convenient for the parties and witnesses to the action to transfer venue to Arkansas because of the hardship on Castings' employees if the action were tried in New York. Fourth, the defendant contends that the plaintiff's choice of forum should be given no weight at all in evaluating the transfer of venue because their choice was not based on any factors from the applicable venue statute. Finally, the defendant contends that because the Eastern District of New York has a busier docket than the Eastern District of Arkansas, that the parties will achieve an earlier resolution to the dispute, if the venue is transferred to Arkansas.

In this Court's view, Castings has not met its burden to require this Court to disturb the plaintiff's choice of venue. Although the defendant does reside in Arkansas and this dispute could have been brought in the Eastern District of Arkansas, the defendant fails to satisfy the other relevant factors that courts rely upon when deciding whether to transfer venue. The contract was not exclusively negotiated in New York (negotiations were conducted by telephone, FAX, and mail). However, the operative events relating to the claim can be said to have occurred in of New York. The breach of contract claim stems from the manufacturing and shipping to New York of allegedly defective "arms" by Castings to Laumann where the alleged defects were discovered by Laumann in New York. The alleged defective "arms" are now in Laumann's possession and Laumann's employees who initially detected the defects in the part are in New York. The F.O.B. Arkansas clause in the contract, within the context of venue, is irrelevant. Therefore, since the operative events relating to the breach of contract claim did occur in New York, New York is the proper forum.

Second, although the defendant included in his supporting affidavit, a list of key witnesses who are located in Arkansas, it has failed to provide what their testimony will be, and why it would be inconvenient for any witness if the case remained in the Eastern District of New York. *Factors Etc. Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). In sum, the defendant's contentions of increased convenience to the parties and witnesses are supported only by mere general allegations of convenience.

Third, the plaintiff's choice of forum should not be disturbed by the Court unless the above-mentioned criteria strongly weighs in the defendant's favor. *Schwartz v. R.H. Macy's*, 791 F.Supp. 94 (S.D.N.Y.1992). In this court's view, it does not. Deference should be given to the plaintiff's choice of forum. *Congress Financial Corporation v. John Morrell and Co.*, 761 F.Supp. 16, 17 (S.D.N.Y.1992). The purpose of 1404(a) is not to shift the inconvenience from one party to the other. *Milgrim Thomajan & Lee P.C v. Nycal Corp.*, 775 F.Supp. 117 (S.D.N.Y. 1991). In fact, there will usually be greater inconvenience to one of the parties depending upon where the trial is held, in this case whether it will be New York or Arkansas. The plaintiff's choice of forum should only be disturbed if that choice is completely and utterly outweighed by the severe inconvenience of the defendant. The defendant has not satisfied this standard. Accordingly, "the plaintiff is entitled to the benefit of its choice of forum." *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 314 (S.D.N.Y.1983).

Finally, the defendant asserts that the interest of justice will be served more efficiently by a transfer because the docket of this court, the Eastern District of New York, is more congested than the District Court of Eastern District of Arkansas. Although this factor should be accorded some weight in determining a motion pursuant to § 1404(a), it is not dispositive. *Foster v. Litton Industries, Inc.*, 431 F.Supp. 86, 88 (S.D.N.Y.1977); *Milgrim Thomajan & Lee, P.C. v. Nycal Corp.*, 775 F.Supp. 117, 122 (S.D.N.Y.1991). This court is not swayed by the defendant's argument, given all of the other factors weighing against a transfer. In any event, if the parties move along as urged by the Magistrate Judge in charge of discovery, a jury case can be heard within two years in this Court.

An additional point not addressed by the defendant, however, is the New York choice of law provision in the contract between the parties. Since both parties agreed to apply

New York law to govern all disputes arising from the contract, the district court in making its venue determination, is entitled to give some weight to the fact that the agreement calls for New York law to govern. *Filmline (Cross–Country) Prods. v. United Artists*, 865 F.2d 513, 520 (2d Cir.1989); 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3854, at 466–68. According to the Supreme Court of the United States in *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), "[t]here is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Van Dusen*, 376 U.S. at 645, 84 S.Ct. at 824, quoting, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1940).

All of the aforementioned factors militate in favor of a New York forum, and against transferring the case. In this court's view, a trial in this forum would not establish "oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience." *American Dredging Co. v. Miller*, —— U.S. ——, ——, 114 S.Ct. 981, 985, 127 L.Ed.2d 285 (1994).

Accordingly, Castings' motion to transfer this action to another district pursuant to 28 U.S.C. § 1404(a) is denied in all respects.

## III. CONCLUSION

After reviewing the parties' submissions, and for the reasons stated above, it is hereby

ORDERED, that the defendant's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(2) on the ground of lack of personal jurisdiction over the defendant is DENIED; it is further

ORDERED, that the defendant's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(3) on the ground that venue is improper in the Eastern District of New York is DENIED; it is further

ORDERED, that the defendant's motion to transfer this case to another district pursuant to 28 U.S.C. § 1404(a) is DENIED; and it is further

ORDERED, that the parties report to the assigned Magistrate Judge and proceed to complete discovery expeditiously.

SO ORDERED.