**SCHOMANN INTERNATIONAL CORPORATION, Plaintiff,**

v.

**NORTHERN WIRELESS, LTD. and Curt Koch, Defendants.**

No. 98–CV–1305.

United States District Court, N.D. New York.

Jan. 26, 1999.

Office of Frank A. Bersani, Jr., Frank A. Bersani, Jr. of counsel, Syracuse, NY, for plaintiff.

Swisher & Cohrt, P.L.C., L.J. Cohrt, of counsel, Waterloo, IA, Bond, Schoeneck & King. L.L.P., Deborah H. Karalunas, of counsel, Syracuse, NY, for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

The present action arises out of a Complaint filed on August 13, 1998 by Schomann International Corporation ("Schomann" or "Plaintiff") against Northern Wireless, Ltd. ("Northern") and Curt Koch ("Koch") (collectively the "Defendants"), alleging breach of contract relating to the purchase of equipment and construction and installation of cellular telecommunications systems in the Republic of Georgia, formerly part of the U.S.S.R. Defendants move to dismiss for lack of personal jurisdiction and improper venue, pursuant to FED.R.CIV.P. 12(b)(2) and (3) or in the alternative, for a change of venue for the convenience of the parties, pursuant to 28 U.S.C. § 1404(a). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

In considering a motion to dismiss, the Court accepts as true the factual allegations in the Complaint. *See Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Those allegations follow.

On or about December 18, 1997, Plaintiff, a New York corporation with its principal place of business in Skaneateles, New York, entered into a Consulting Services Agreement (the "Agreement") with Koch, the principal and sole shareholder of Northern, an Iowa corporation with its principal place of business in Hudson, Iowa, requiring Defendants to act as Plaintiff's engineering consultant with respect to its acquisition and installation of a cellular telecommunications system in the Republic of Georgia. Koch, a telecommunications engineer, contracted to perform the services provided in the Agreement. These services included, inter alia, selection of the cell site locations; acquisition of all equipment; provision of all facilities, tools, and personnel necessary to test and ship the equipment; and installation of the equipment at the selected cell site locations. The Agreement detailed specific work and delivery requirements and required Northern to complete the installation work in an "expeditious and workmanlike manner."

Schomann alleges that Defendants breached the Agreement by, inter alia, suspending work on the project without proper authorization, failing to provide written progress reports and misrepresenting the status of the project, failing to provide sufficient personnel, delaying completion of the project, and failing to notify Plaintiff of such delays and take appropriate remedial steps to comply with the delivery and installation schedules provided in the Agreement.

Plaintiff seeks to hold Northern liable in its corporate capacity, and against Koch, individually, as the sole shareholder and "alter-ego" of Northern, and seeks monetary damages for overpayments to Northern and lost revenues resulting from Schomann's inability to solicit customers by the date of completion set forth in the Agreement.

## II. DISCUSSION

### A. Personal Jurisdiction

Defendants first move under FED.R.CIV.P. 12(b)(2) to dismiss the Complaint against them for lack of personal jurisdiction.

Where subject matter jurisdiction is predicated upon diversity of the parties, the law of the forum state applies in determining whether a plaintiff has personal jurisdiction over a defendant. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996); *CutCo Indus. Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). A plaintiff bears the ultimate burden of establishing jurisdiction over a defendant by a preponderance of the evidence. *See CutCo Indus.,* 806 F.2d at 365. Where, however, personal jurisdiction is challenged prior to discovery, a plaintiff may defeat the motion " 'by pleading in good faith, see FED. R.CIV.P. 11, legally sufficient allegations of jurisdiction,' i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990)). In deciding such a motion, all pleadings and affidavits must be construed in the light most favorable to the plaintiff. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

Schomann contends that jurisdiction over Northern exists under New York's long-arm statute, N.Y.C.P.L.R. § 302(a)(1), which provides, in pertinent part:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state....

N.Y.C.P.L.R. § 302(a)(1) (McKinney Supp. 1999).

For a court to exercise jurisdiction under this provision, two conditions must be met—the non-domiciliary must "transact business" within the forum state and the claim must also "arise from" the transaction of business within the state. *See Agency Rent A Car Sys., Inc.*, 98 F.3d at 29; *CutCo Indus.*, 806 F.2d at 365 (citing *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981) (requiring an "articulable nexus between the business transacted and the cause of action sued upon")). To "transact business" under CPLR § 302(a)(1), a non-domiciliary must "purposefully avail [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus.*, 806 F.2d at 365 (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967)). The "arises from" prong is satisfied if there exists a substantial relationship between the defendant's activities in the forum state and the transaction out of which the cause of action arose. *See Vardinoyannis v. Encyclopedia Britannica, Inc.*, 1990 WL 124338, at *4 (S.D.N.Y. August 20, 1990). These standards ensure that jurisdiction comports with due process requirements such that the defendant can "reasonably 'anticipate being haled into court' in that forum." *See National Tel. Director Consultants, Inc. v. Bellsouth Adver. & Publishing Corp.*, 25 F.Supp.2d 192, 196 (S.D.N.Y.1998) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

In determining whether an out-of-state defendant "transacts business" in New York, the Second Circuit has adopted an approach that considers a variety of factors, including: (1) whether the defendant has an on-going contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (3) what the choice-of-law clause is in any such contract; and (4) whether the contract requires notices and payments to be sent into the forum state or requires supervision by the corporation in the forum state. *See Agency Rent A Car Sys., Inc.*, 98 F.3d at 29; *National Tel. Director Consultants, Inc.*, 25 F.Supp.2d at 195; *Lacey v. Zartman*, 1998 WL 312354, at *6 (N.D.N.Y. June 8, 1998). Although these factors provide some guidance, courts examine the totality of the defendant's contacts within the forum state in determining whether personal jurisdiction over a defendant exists. *See Agency Rent A Car Sys., Inc.*, 98 F.3d at 29; *CutCo Indus.*, 806 F.2d at 365; *George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *Glassman v. Hyder*, 23 N.Y.2d 354, 362, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968). In certain instances, however, a single transaction may satisfy the statutory transaction of business requirement. *See Ingraham v. Carroll*, 90 N.Y.2d 592, 597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997) (noting that a " 'one shot' single business transaction" is sufficient to meet the transacting business requirement under CPLR 302(a)(1)); *George Reiner & Co.*, 41 N.Y.2d at 651, 394 N.Y.S.2d 844, 363 N.E.2d 551. The Court is mindful, however, that the existence of personal jurisdiction is, in the end, evaluated on an individual basis, based on a "unique set of facts and circumstances." *See Berk v. Theatre Arts of W. Virginia, Inc.*, 157 Misc.2d 696, 598 N.Y.S.2d 418, 421 (Civ.Ct.1993).

In the present case, Defendants assert, in most general terms, that the Complaint fails to allege personal jurisdiction over them because they: (1) did not conduct sufficient activities in the State of New York to trigger section 302(a)(1) of New York's long-arm statute; and (2) lack minimum contacts with New York State to satisfy due process. In response, Plaintiff places significant reliance on the New York choice-of-law provision in the contract, and correspondence, purchase orders, and payment requests sent by Defendants to Plaintiff's business in New York. Plaintiff further contends that Defendants reasonably anticipated that any litigation arising from the contract would occur in New York since Defendants' contacts with Plaintiff were limited to its New York headquarters and the project site in the Republic of Georgia.

## 1. On-going Contractual Relationship

Plaintiff does not allege that it had prior business dealings or entered into a similar contractual relationship with Defendants in the past. *See Agency Rent A Car Sys., Inc.,* 98 F.3d at 30 (continual business relationship over three decades constituted on-going contractual relationship); *National Tel. Director Consultants, Inc.,* 25 F.Supp.2d at 196 (assuming, without deciding, that an on-going marketing campaign over a number of years constituted an on-going contractual relationship). New York courts, however, have adopted a *prospective* analysis in determining whether an ongoing contractual relationship exists. *See George Reiner & Co.,* 41 N.Y.2d at 653, 394 N.Y.S.2d 844, 363 N.E.2d 551 (four-year employment contract "contemplated and resulted in a continuing relationship between [the parties]"); *China Express, Inc. v. Volpi & Son Machine Corp.,* 126 A.D.2d 239, 513 N.Y.S.2d 388, 392 (1st Dep't 1987) (noting that the installation and monitoring of restaurant equipment "manifestly contemplated an ongoing relationship between the parties"); *Roman v. Sunshine Ranchettes, Inc.,* 98 A.D.2d 744, 469 N.Y.S.2d 449, 450 (2d Dep't 1983). Thus, when viewed prospectively, the contract contemplated a continued business relationship between Defendants and a New York corporation during the completion of the project, which did not involve "temporary, random, or tenuous relationships with [New York]." *Agency Rent A Car Sys., Inc.,* 98 F.3d at 30.

In contrast to a shipment of goods scheduled to occur at a specific time in the near future, it is clear that the acquisition and installation of the telecommunications equipment would occur over an extended period of time and would require continued contact between the parties. Here, Defendants' activities were directed toward, and resulting in, the establishment of a contractual relationship between the parties. *See George Reiner & Co., Inc.,* 41 N.Y.2d at 654, 394 N.Y.S.2d 844, 363 N.E.2d 551. Thus, the Court finds that the duration and type of services to be performed under the contract necessarily evince an on-going contractual relationship.

## 2. Negotiation and Execution of the Contract

It is undisputed that Defendants were not physically present in New York during the negotiation and execution of the contract. Physical presence, however, is not the sole means by which a defendant purposefully avails himself of the forum state. *See Agency Rent A Car Sys., Inc.,* 98 F.3d at 30–31; *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir.1996) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In rejecting that physical presence in the forum state is critical to establishing personal jurisdiction, the Second Circuit has noted that, "we question whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence." *Agency Rent A Car Sys., Inc.,* 98 F.3d at 30–31; *see also Hoffritz for Cutlery, Inc.,* 763 F.2d at 60 ("[I]t is unnecessary that final negotiations or indeed execution of the contract to take place in New York" for a New York court to sustain personal jurisdiction). The Court will therefore examine Defendants' contacts with New York during the negotiation and execution of the Agreement.

Plaintiff alleges that "[a]ll telephone calls, correspondence, and faxes regarding the Agreement and the project itself were sent to [Plaintiff] in New York." Pl. Mem. of Law at 2. It is clear that Defendants contracted to provide their services to a New York corporation, in an agreement governed by New York law. While the Court is aware that telephone calls and correspondence directed at a forum state are generally insufficient, standing alone, to establish personal jurisdiction, *see* Lacey, 1998 WL 312354, at *5; *Professional Personnel Management Corp. v. Southwest Med. Assocs.,* 216 A.D.2d 958, 628 N.Y.S.2d 919, 919 (4th Dep't 1995), modern technology may obviate the need for the parties to be physically present in one location to negotiate and execute a contract. *See Agency Rent A Car Sys., Inc.,* 98 F.3d at 30–31.

An arrangement limited solely to telephone and fax transmissions may be sufficient when examined against the business

needs of the parties and the specific circumstances of the transaction. Here, the parties may have reasonably believed that Defendants' physical presence in New York was simply unnecessary, and that telephone, mail, and fax transmissions provided sufficient contact between the parties. Indeed, given the benefits of modern technology and time and expense associated with interstate travel, physical presence of the parties in the same room may no longer be required in order to execute a contract. Thus, the Court finds Defendants' argument requiring physical presence in New York to sustain personal jurisdiction unpersuasive.

Defendants' contacts with New York were not, however, designed to permit them to conduct activities within New York. The services contracted for in the Agreement required Northern to install telecommunications equipment in the Republic of Georgia, not in New York. Thus, while Defendants may have maintained the requisite contacts with New York, they "did not avail [themselves] of the privilege of conducting activities in New York." *International Customs Assocs., Inc. v. Ford Motor Co.*, 893 F.Supp. 1251, 1260 (S.D.N.Y.1995) (contract to negotiate lower import costs and customs duties in Taiwan); *see also National Tel. Director Consultants,* 25 F.Supp.2d at 196 (contract to provide advertising in defendant's southeastern United States telephone directories); *Lacey,* 1998 WL 312354 at * 6 (contract to provide financial assistance to educational program in Morocco); *Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. 108, 113 (S.D.N.Y.1993) (purchase of a petroleum refinery in Germany). Because Defendants' correspondence, telephone calls, and fax transmissions were "merely a conduit to establish a contract," they are insufficient, standing alone, to provide a basis for jurisdiction based on Defendants' projecting themselves into New York in such a manner that they purposefully availed themselves of the benefits and protection of its laws. *Broad Horizons, Inc. v. Central Crude Ltd.,* 1994 WL 623075, at * 4 (S.D.N.Y. November 9, 1994); *see also Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.,* 2 F.Supp.2d 470, 475 (S.D.N.Y.1998) ("[F]ax and mail contact provides a basis for CPLR 302(a)(1)

jurisdiction only when the defendant has purposely projected himself into New York to avail himself of the benefits and protections of its laws.").

### 3. Choice–of–Law Provision

It is axiomatic that a choice of law provision in a contract, standing alone, does not constitute a voluntary submission to personal jurisdiction. *See CutCo Indus.,* 806 F.2d at 366; *McShan v. Omega Louis Brandt Et Frere, S.A.,* 536 F.2d 516, 518 (2d Cir.1976). However, the parties' choice of law provision should not be ignored when making a determination regarding jurisdiction. *See Burger King Corp.,* 471 U.S. at 482, 105 S.Ct. 2174; *CutCo Indus.,* 806 F.2d at 366; *EAC Sys., Inc. v. Chevie,* 154 A.D.2d 813, 546 N.Y.S.2d 252, 254 (3d Dep't 1989).

Here, it is undisputed that the Agreement contained a choice of law provision requiring that the contract be governed by New York law. Thus, this factor favors a finding that Defendants purposefully invoked the benefits and protections of New York's laws for jurisdictional for the purposes of determining personal jurisdiction. *See Burger King Corp.,* 471 U.S. at 482, 105 S.Ct. 2174; *Agency Rent A Car Sys., Inc.,* 98 F.3d at 30; *CutCo Indus.,* 806 F.2d at 367.

### 4. Notices and Payments to, and Supervision by, the Forum State

Schomann alleges that Defendants prepared and forwarded numerous purchase orders for equipment relating to the project on Schomann's pre-printed forms to Schomann's New York headquarters, indicating Schomann as the purchaser of the equipment. Additionally, all payment requests were sent by Defendants to Plaintiff in New York, and payments came from Schomann's New York office, presumably drawn on its New York bank account. Plaintiff further alleges that Defendants failed to forward status reports of the project that Schomann requested be sent to its New York headquarters for review.

In a service project like the one at issue, where performance occurs in another coun-

try over an extended period of time, it is reasonable to assume that the party performing under the contract will be subject to considerable supervision and communicate frequently with the other party during the duration of the contract. In the present case, this oversight took the form of regular communications with Schomann's New York office. Moreover, purchase orders and invoices were forwarded by Defendants to Plaintiffs in New York, and payments were drawn on Schomann's New York bank account. Thus, Defendants' continued contact with Schomann's New York office favors a finding that Defendants' purposefully availed themselves of conducting business in New York. *See Burger King Corp.*, 471 U.S. at 480–81, 105 S.Ct. 2174 (contract provisions requiring all "relevant notices and payments" be sent to the forum state relevant for jurisdictional purposes); *Agency Rent A Car Sys., Inc.*, 98 F.3d at 31 (monthly payments and reports sent to forum state and daily contacts and oversight by the forum state relevant in concluding that defendant transacted business under CPLR 302(a)(1)); *Cut-Co Indus.*, 806 F.2d at 368 (forwarding of royalties, fees, and financial information to forum state and continuous contact and supervision by plaintiff in forum state relevant for determining jurisdiction).

Defendants' argue that Plaintiff's cause of action did not "arise out of" Defendants' contacts with the forum state. Specifically, Defendants contend that because the alleged acts giving rise to Plaintiff's breach of contract claim occurred outside New York, the action does not "arise out of" Defendants' transactions in the forum state.

The Second Circuit has rejected the notion that "a claim based on an alleged breach of contract that occurs outside of New York cannot be said to 'arise out of' transactions in the forum." *Agency Rent A Car Sys., Inc.*, 98 F.3d at 31; *see also Hoffritz for Cutlery, Inc.*, 763 F.2d at 59 (noting that a requirement that the acts constituting the alleged breach of contract take place in New York would lead to the narrow conclusion that a New York court would not have jurisdiction "merely on the basis that the acts alleged in the complaint did not take place in New York"); *George Reiner & Co., Inc.*, 41 N.Y.2d at 653, 394 N.Y.S.2d 844, 363 N.E.2d 551 (contract establishing a continuing relationship between the parties is a transaction giving rise to a breach of contract action). Although the Complaint alleges a breach of contract based on Defendants' conduct outside New York, the action arises directly from the Agreement, which is "sufficiently related to business transacted" in New York. *Hoffritz for Cutlery, Inc.*, 763 F.2d at 59; *see also Agency Rent A Car Sys., Inc.*, 98 F.3d at 31.

### 5. Constitutional Considerations

In assessing the totality Defendants' acts in New York, and construing the pleadings and affidavits in a light most favorable to Plaintiff, as required at this early stage in the litigation, the Court finds that Plaintiff has made a prima facie showing of personal jurisdiction. Here, Defendants deliberately reached out of their home state to negotiate and enter into a contract with a New York business. The contract contemplated regular contact with Schomann's New York office, and required that various notices, invoices, and payment requests be sent to Schomann in New York. Moreover, the parties agreed that the terms of the contract be governed by New York law. Under these circumstances, Defendants' affiliation with New York made it reasonably foreseeable that litigation might possibly occur in New York, *see Burger King Corp.*, 471 U.S. at 482, 105 S.Ct. 2174, and thus, comports with "traditional notions of fair play and substantial justice." *Agency Rent A Car Sys., Inc.*, 98 F.3d at 32 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Accordingly, Defendants' motion to dismiss the Complaint for lack of personal jurisdiction pursuant to FED. R.CIV.P. 12(b)(2) is denied.

### B. Venue

■ Defendants next move to dismiss the Complaint pursuant to FED.R .CIV.P. 12(b)(3)

on the basis of improper venue. For the reasons stated below, however, the Court finds that venue is proper in the Northern District of New York pursuant to § 1391(a)(2).

The Complaint alleges diversity jurisdiction under 28 U.S.C. § 1332. Accordingly, the venue statute applicable to this action is 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (West 1998).

Because venue is challenged, Plaintiff bears the burden of proving that venue is proper in the chosen forum. *See ESI, Inc. v. Coastal Power Prod. Co.,* 995 F.Supp. 419, 424 (S.D.N.Y.1998); *PI Inc. v. Quality Prods., Inc.,* 907 F.Supp. 752, 757 (S.D.N.Y.1995).

Here, Defendants argue that §§ 1391(a)(1) and (2) establish that venue is proper in the Northern District of Iowa, thus precluding the applicability of § 1391(a)(3), which looks to where the parties are subject to personal jurisdiction. Specifically, Defendants assert that the Northern District of Iowa is where Northern is incorporated and has its principal place of business, where Koch resides, *see* 28 U.S.C. § 1391(a)(1), and where a substantial part of the contract was to be performed. *See* 28 U.S.C. § 1391(a)(2). In response, Plaintiff alleges that venue over the breach of contract claim is proper under § 1391(a)(1). This argument is apparently based on an improper reading of § 1391(c), which states that a defendant that is a corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Thus, Plaintiff relies on its earlier argument that Defendants are subject to personal jurisdiction in New York to establish venue for its action in New York. This argument, however, is flawed in that Plaintiff has chosen to sue both Northern, the corporation, and Koch, Northern's President, in his *individual* capacity. Accordingly, the provisions of § 1391(c) are inapplicable to Koch, and § 1391(a)(1) fails to provide a basis for venue in the Northern District of New York for Plaintiff's breach of contract claim with respect to both defendants.

Where, as here, a contract forms the basis of Plaintiff's claims, "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc.,* 907 F.Supp. at 757–58; *see also Prudential Secs., Inc. v. Norcom Dev., Inc.,* 1998 WL 397889, at *4 (S.D.N.Y. July 16, 1998); *ESI, Inc.,* 995 F.Supp. at 424–25. Because § 1391(a)(2) provides that "there can be more than one district in which a substantial part of the events giving rise the claim occurred," venue can properly exist in more than one district. 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3804 (Supp.1998). Accordingly, § 1391(a)(2) provides the courts with a more flexible standard in determining where venue is proper, and obviates the need for the courts to "identify that one district in which the contacts weigh more heavily than in any others." *Id.; see also Jannus Group, Inc. v. Independent Container, Inc.,* 1998 WL 542294, at *1 (S.D.N.Y. August 24, 1998) ("[Section 1391(a)(2)] does not require that plaintiffs establish that [one district] has 'the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere.' ") (quoting *Neufeld v. Neufeld,* 910 F.Supp. 977, 986 (S.D.N.Y.1996)).

Typical of many contractual arrangements today that no longer require face-to-face meetings to negotiate and execute a contract, here, the parties entered into a contract apparently negotiated by telephone, fax, and letter, for the purchase and installation of telecommunications equipment at a number of sites in the Republic of Georgia. Consequently, the parties negotiated and executed the terms of the Agreement through telephone conversations and correspondence between their respective New York and Iowa offices, without Koch physically entering New York. Accordingly, it is fair to say that the Agreement was negotiated and executed in both New York and Iowa. The terms of the contract also provided that purchase orders and payment requests were forwarded to Plaintiff's New York office, and payment was made from Schomann's New York office. Additionally, Schomann regularly supervised Defendants' performance under the Agreement and requested that periodic status reports be status reports be sent by Defendants to Schomann's New York office. Thus, Defendants maintained regular communication with Schomann during the duration of the contract. The Court, therefore, rejects Defendants' argument that venue is improper in New York solely because performance of the contract occurred outside New York, and finds that venue is proper in the Northern District of New York. *See Jannus Group, Inc.,* 1998 WL 542294, at *1–2; *Prudential Securities Inc.,* 1998 WL 397889, at *4–5; *ESI, Inc.,* 995 F.Supp. at 424–25; *PI Inc.,* 907 F.Supp. at 757–58. Accordingly, Defendants' motion to dismiss the Complaint pursuant to FED.R.CIV.P. 12(b)(3) is denied.

### C. Transfer of Venue

In the alternative, Defendants move to transfer the entire action to the Northern District of Iowa. A motion to transfer venue from one federal district court to another, when venue is initially proper, is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil case to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (West 1998).

Distinct from § 1406(a), which deals with cases where venue is initially improper, § 1404(a) permits transfer of a civil action where venue is properly laid, to any other district in which the case could have been brought. *See* 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3827 (West 1986). A party seeking to transfer venue pursuant to 28 U.S.C. § 1404(a) must demonstrate that: (1) the action could have been brought originally in the transferee forum; (2) the transferee forum would be more convenient; and (3) transfer advances the interests of justice. *See Prudential Securities Inc.,* 1998 WL 397889, at *2. Once the court determines that the action might have been brought in the district court in which the moving party seeks to have the case litigated, it "must then look to whether 'the convenience of parties and witnesses' and 'the interest of justice', weighs in favor of a transfer to the proposed district." *Laumann Mfg. Corp. v. Castings USA,* 913 F.Supp. 712, 720 (E.D.N.Y.1996).

The goal of § 1404(a) " 'is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Id.* at 720 (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). The burden is on the moving party to "clearly establish that a transfer is appropriate," by providing an "affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including 'the potential principal witnesses expected to be called and a general statement of the substance of their testimony.' " *Id.* (citing *Modern Computer Corp. v. Ma,* 862 F.Supp. 938, 948 (E.D.N.Y.1994)); *see also Butcher v. Gerber Prods. Co.,* 1998 WL 437150, at *3 (S.D.N.Y. August 3, 1998); *Air–Flo M .G. Co., Inc. v. Louis Berkman Co.,* 933 F.Supp. 229, 233 (W.D.N.Y.1996) (noting that to prevail on a motion to change venue, defendant must make a "clear showing" that the proposed transferee court better serves the interests of justice).

Courts have employed a variety of factors that assist in determining whether

to transfer a case to another district. These factors include: (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) the availability of process to compel the presence of unwilling witnesses; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties indicating where the case can be tried more expeditiously and inexpensively; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances. *See SEC v. Pignatiello,* 1998 WL 293988, at *5 (S.D.N.Y. June 5, 1998); *Air–Flo M.G. Co., Inc.,* 933 F.Supp. at 233; *Laumann Mfg. Corp.,* 913 F.Supp. at 720. The plaintiff's choice of forum should be accorded substantial weight, particularly in cases where plaintiff resides in the district where the suit was filed, and therefore should not be disturbed by the court unless the following criteria weighs strongly in defendant's favor. *Butcher,* 1998 WL 437150, at *3 (S.D.N.Y. August 3, 1998); *Air–Flo M.G. Co., Inc.,* 933 F.Supp. at 233; *Laumann Mfg. Corp.,* 913 F.Supp. at 720. The decision of whether or not to transfer venue under § 1404(a) lies wholly within the broad discretion of the district court, and subject to a standard of "clear abuse" on appeal. *See ESI Inc.,* 995 F.Supp. at 425 (citing *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232 (2d Cir.1996)).

■ After carefully evaluating the reasons advanced by Defendants', the Court finds that a change in venue is not warranted. Plaintiff, a New York resident, entered into a contract with Defendants that is governed by New York law. Material witnesses and documents relevant to this action are located in both New York and Iowa, and it is unclear which of Defendants' proposed witnesses will actually be called at trial since much of the testimony will address events that occurred in the Republic of Georgia, and not in Iowa. Furthermore, because many of Defendants' witnesses are employees of Northern, it will not be difficult to assure their attendance at trial. While it is clearly more convenient for Defendants to have the action litigated in Iowa, where Koch and some of the potential witnesses reside, this will result in an inconvenience for Plaintiff, who resides in New York and maintains its employees and books and records there. Thus, this litigation will impose burdens on both parties regardless of where it is venued, and a transfer will simply "shift the inconvenience from one party to the other." *Laumann Mfg. Corp.,* 913 F.Supp. at 721. Because Defendants have failed to carry their burden of demonstrating that Plaintiff's chosen venue "is completely and utterly outweighed by the severe inconvenience of the [Defendants]," *id.* at 721, their motion to transfer venue is denied.

## III.  CONCLUSION:

For all of the foregoing reasons, it is hereby ORDERED, that Defendants' motion to dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(2) and (3) are DENIED. Further, Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is DENIED.

**IT IS SO ORDERED.**